**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Mohammad Rahim Karimzai,

Petitioner,

v.

David R. Rivas, et al.,

Respondents.

No. CV-26-01367-PHX-SPL (JFM)

**ORDER**

Petitioner filed a habeas corpus petition under 28 U.S.C. § 2241 seeking release from immigration detention. (Doc. 1). By Order dated February 27, 2026, the Court ordered Respondents to show cause for why the Petition should not be granted. (Doc. 3). After Respondents filed their Response (Doc. 6) and Petitioner filed multiple motions (Docs. 8, 9, 12, 14), the Court directed a status update because the basis for Petitioner's detention was unclear. (Doc. 15). Respondents provided that update on September 8, 2026. (Doc. 16). Upon review of the record, the Court now finds that Petitioner is entitled to release from custody, but due to his medical vulnerability, the Court will solicit briefing on the safest way to effectuate Petitioner's release.

## I. Background

As recounted in the Court's previous Order, Petitioner is a native of Afghanistan who previously worked alongside United States armed forces in that country. (Doc. 1 at 19, 45). After being persecuted by the Taliban due to that work, Petitioner fled Afghanistan and eventually entered the United States on February 25, 2025, sought asylum, and was

taken into custody shortly thereafter. (Doc. 1 at 5). Petitioner expressed fear of returning to Afghanistan and was referred for an assessment pursuant to the Convention Against Torture (CAT). (Doc. 6-1 at 2). On March 16, 2025, DHS concluded that Petitioner was not entitled to CAT relief; Petitioner asserts that the CAT assessment was "unfairly denied." (*Id.*; Doc. 1 at 5). On September 12, 2025, ICE Enforcement and Removal Operations (ERO) "submitted an Afghan Transportation Letter required for travel to the U.S. Embassy in Doha, Qatar for delivery to the Afghan Embassy"; as of the filing of the Response, ERO was still "awaiting a response from the Afghan government." (Doc. 6-1 at 2). On March 2, 2026, Petitioner was "referred to USCIS for a credible fear interview." (*Id.*). Petitioner indicates that this interview was conducted on or about March 19, 2026, was apparently denied, and that "a final removal order was maintained." (Doc. 8 at 2). Petitioner further states that at the time of the interview he "was suff[e]ring from serious medical and psychological instability,"[1] and that as a result he "was not medically and psychologically stable for an interview." (*Id.*). A "Detainee and ICE Communications Form" indicates that Petitioner "ha[s] a Final Order of Removal Since [May 15, 2025]." (Doc. 12 at 4). In their Status Update, Respondents clarify that Petitioner's removal order became final on March 19, 2026, and assert that they are "attempting to secure travel documents and remove Petitioner to Afghanistan in the reasonably foreseeable future." (Doc. 16).

As of the date of this Order, Petitioner has been detained for approximately 19 months, and more than six months since his order of removal became final.

## II. Legal Standard

Petitioner's continued detention is governed by 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001). Under § 1231(a)(1), the Government has 90 days in which to

---

[1] Petitioner provides voluminous evidence (Doc. 1-1 through 1-5) that he suffered a stroke while detained, required brain surgery, was hospitalized for at least a month, and has had extensive complications in the months since. In their recent Status Update, Respondents assert that "Petitioner has been adjudicated 'mentally incompetent' by an Immigration Judge." (Doc. 16). However, Respondents provide no evidence substantiating this assertion, and the Court has been unable to locate any such adjudication in the record.

remove an alien once a removal order becomes final. Detention during this removal period is mandatory. 8 U.S.C. § 1231(a)(2). If the Government is unable to effect removal within the 90-day removal period, however, continued detention of aliens such as Petitioner becomes discretionary. 8 U.S.C. § 1231(a)(6). That discretion, however, is not unfettered, and indefinite detention is not permitted. *Zadvydas*, 533 U.S. at 689 (8 U.S.C. § 1231(a)(6) "does not permit indefinite detention."). This is not to say that every alien like Petitioner must be released once the 90-day removal period has expired. *Id.* at 701. Rather, the Supreme Court in *Zadvydas* recognized an implicit post-§ 1231(a)(2) period in which continued detention is "presumptively reasonable" and does not violate the Fifth Amendment. *Id.* The *Zadvydas* Court concluded that this "presumptively reasonable" period extends for no more than 6-months once an order of removal becomes final (including the 90-day mandatory detention period under § 1231(a)(2)). *Id.* Thereafter, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If, after considering the evidence, the Court finds that "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699.

## III. Discussion

As noted, Petitioner has now been detained beyond that "presumptively reasonable" period identified in *Zadvydas*. Petitioner asserts that his removal is not significantly likely to occur in the reasonably foreseeable future due to "[t]he irregular diplomatic relationship between the United States and Afghanistan." (Doc. 1 at 6). Petitioner further indicates that the "embassy consulate has not issued Petitioner travel documents," and "does not cooperate [with] United States deportation efforts." (*Id.* at 28-29). Respondents do not contest this characterization of the current diplomatic relationship between the United States and Afghanistan, and, indeed, implicitly concede that there is presently no formal relationship between the two countries given that communication is routed through an intermediary. (*See* Doc. 6-1 at 2). On this record, the Court finds that Petitioner has shown

good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. The burden thus shifts to Respondents to rebut this showing with sufficient evidence.

Respondents have not carried their evidentiary burden. The only evidence presented of any efforts to effectuate Petitioner's removal is that on September 12, 2025—more than a year ago—ICE ERO "submitted an Afghan Transportation Letter required for travel to the U.S. Embassy in Doha, Qatar for delivery to the Afghan Embassy." (*Id.*). No evidence has been provided that any response has been received to this letter, or that any response is forthcoming. Although Respondents assert in their recent status update that they are "attempting to secure travel documents and remove Petitioner to Afghanistan in the reasonably foreseeable future," they provide no evidence substantiating that assertion. (Doc. 16). On this record, there is no evidence to support that there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future.

The Supreme Court held in *Zadvydas* that as the period of detention grows, "what counts as the 'reasonably foreseeable future' would have to shrink." 533 U.S. at 701. As noted, Petitioner has now been detained beyond the presumptively reasonable period identified in *Zadvydas*, and having provided "good reason" to support that his removal is not significantly likely to occur in the reasonably foreseeable future, the burden shifts to Respondents to rebut that showing with sufficient evidence. *Id.* Respondents have failed to do so. Accordingly, the Court finds that Petitioner's continued detention is in violation of the Fifth Amendment, and he is thus entitled to release from custody.

**IV. Release**

As noted (*see* n. 1, *supra*), Petitioner suffered a stroke while detained, required brain surgery, was hospitalized for at least a month, and has had extensive complications in the months since. Echoing this reality, Respondents request "time beyond the standard release order (maybe 10 days) in order to safely release Petitioner to a responsible party." (Doc. 16). The Court shares these concerns for Petitioner's well-being, and will not accept simply blindly releasing him without some structure in place to ensure he receives any

necessary medical care. Petitioner indicates that he has a "family resident" "sponsor" who lives in California (*see* Doc. 1 at 29), but it is unclear whether this person would be a suitable release option.

Accordingly, the Court will direct Respondents to identify how they propose to "safely release Petitioner to a responsible party," and will provide Petitioner the opportunity to suggest how best to safely effectuate his release. Given the length of time in which Petitioner has been detained and his entitlement to release, the Court will require this briefing on an expedited basis. To facilitate these responses, and in the interests of justice, the Court will appoint the Federal Public Defender's Office to represent Petitioner for the remainder of this matter. *See* 18 U.S.C. § 3006A(a)(2)(B) (the court has the discretion to appoint counsel when "the interests of justice so require").

**IT IS THEREFORE ORDERED** that:

(1) The Petition for Habeas Corpus (Doc. 1) is **granted**.

(2) Petitioner's various motions (Docs. 8, 9, 12, 14) are **denied as moot**.

(3) Assistant Federal Public Defender Keith J. Hilzendeger is appointed to represent Petitioner in this action. As soon as practicable, Mr. Hilzendeger must file a notice of appearance and advise Petitioner of his appointment.

(4) Within **SEVEN (7) DAYS** of the date of this Order, Respondents must file a proposed release plan as set forth herein.

(5) Petitioner may file a reply within **THREE (3) DAYS** of Respondents' release plan.

(6) Relief is **stayed** pending the briefing set forth above.

Dated this 18th day of September, 2026.

Honorable Steven P. Logan
United States District Judge